**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| JENNIFER MCGUIRE, Individually and for Others Similarly Situated <br><br> v. <br><br> ASCENSION HEALTH MINISTRY SERVICE CENTER, LLC | Case No. _____ <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Jennifer McGuire ("McGuire") brings this collective action to recover unpaid wages and other damages from Ascension Health Ministry Service Center, LLC ("Ascension").

2. McGuire worked for Ascension as a Registered Nurse ("RN") at Ascension's Sacred Heart Bay facility in Panama City, Florida.

3. Like the Putative Class Members (as defined below), McGuire regularly worked more than 40 hours in a week.

4. But Ascension did not pay them for all their hours worked.

5. Instead, Ascension automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6. McGuire and the Putative Class Members were thus not paid for that time.

7. But McGuire and the Putative Class Members did not actually receive *bona fide* meal breaks.

8. Instead, Ascension required McGuire and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Ascension continuously subjected them to work interruptions during their unpaid "meal breaks."

1

9. Ascension's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving McGuire and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Ascension because Ascension is a domestic limited liability company.

12. Venue is proper because Ascension maintains its corporate headquarters in Indianapolis, Indiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. McGuire worked for Ascension as an RN at Ascension's Sacred Heart Bay facility in Panama City, Florida from approximately July 2021 until August 2022.

14. Throughout her employment, Ascension classified McGuire as non-exempt and paid her on an hourly basis.

15. Throughout her employment, Ascension subjected McGuire to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

16. But throughout her employment, McGuire did not actually receive *bona fide* meal breaks.

17. McGuire brings this action on behalf of herself and other similarly situated hourly, non-exempt Ascension patient care employees who were subject to Ascension's automatic meal break deduction policy.

18. Ascension automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

19. But these employees do not actually receive *bona fide* meal breaks.

20. Thus, Ascension uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

21. The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt Ascension employees who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

22. Ascension is an Indiana limited liability company that maintains its principal office in Indianapolis, Indiana.

23. Ascension may be served with process through its registered agent: **Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204**.

## COVERAGE UNDER THE FLSA

24. At all relevant times, Ascension was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Ascension was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Ascension was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Ascension, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

27. At all relevant times, Ascension has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, McGuire and the Putative Class Members were Ascension's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, McGuire and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30. Ascension uniformly deducted 30 minutes a day from McGuire's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

31. As a result, Ascension failed to pay McGuire and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

32. Ascension's meal break deduction policy, therefore, violates the FLSA by depriving McGuire and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

33. Ascension bills itself as "one of the nation's leading non-profit and Catholic health systems, with … approximately 139,000 associates ad 36,000 aligned providers and operat[ing] more than 2,6000 sites of care—including 139 hospitals in 19 states."[1]

34. To meet its business objectives, Ascension hires patient care workers, including McGuire and the Putative Class Members, to work in its various healthcare facilities.

35. Ascension uniformly classifies these patient care employees (including McGuire and the Putative Class Members) as non-exempt and pays them on an hourly basis.

36. While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, McGuire worked for Ascension as an RN at Ascension's Sacred Heart Bay facility in Panama City, Florida from approximately July 2021 until August 2022.

---

[1] https://about.ascension.org/about-us (last visited September 29, 2023).

38. As an RN, McGuire's primary responsibilities included providing direct patient care to the patients at Ascension's Sacred Heart Bay facility, such as monitoring patients, checking vital signs, administering medications, responding to emergencies, charting treatments, and generally assisting doctors and other patient care staff.

39. Throughout her employment, Ascension classified McGuire as non-exempt and paid her on an hourly basis.

40. Throughout her employment, Ascension subjected McGuire to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

41. But throughout her employment, McGuire did not actually receive *bona fide* meal breaks.

42. McGuire and the Putative Class Members perform their jobs under Ascension's supervision and use materials, equipment, and technology Ascension approves and supplies.

43. Ascension requires McGuire and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

44. At the end of each pay period, McGuire and the Putative Class Members receive wages from Ascension that are determined by common systems and methods that Ascension selects and controls.

45. Ascension requires McGuire and the Putative Class Members to record their hours worked using Ascension's timeclock system.

46. Further, Ascension subjects McGuire and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

47. Specifically, Ascension automatically deducts 30 minutes a day from McGuire's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

48. Ascension automatically deducts this time regardless of whether McGuire and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

49. Ascension simply assumes McGuire and the Putative Class Members receive *bona fide* meal breaks each shift they work.

50. But McGuire and the Putative Class Members do not actually receive *bona fide* meal breaks.

51. Instead, Ascension requires McGuire and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

52. And Ascension continuously subjects McGuire and the Putative Class Members to work interruptions during their unpaid meal periods.

53. In fact, even when McGuire and the Putative Class Members attempt to take a meal break, Ascension requires them to stay within their assigned facility and always carry walkie talkies and company-issued cellphones so Ascension can contact them at any time (including during their unpaid "meal breaks").

54. Because of these constant work interruptions, McGuire and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

55. Rather, during their unpaid "meal breaks," McGuire and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

56. Thus, McGuire and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Ascension's—not these employees'—predominant benefit.

57. This unpaid time is compensable under the FLSA because Ascension knew, or should have known, that (1) McGuire and the Putative Class Members were performing unpaid work during

their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Ascension's premises or under Ascension's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Ascension's predominant benefit.

58. Ascension fails to exercise its duty as McGuire's and the Putative Class Members' employer to ensure these employees are not performing work that Ascension does not want performed during their unpaid "meal breaks."

59. And Ascension knows McGuire and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Ascension expects and requires these employees to do so.

60. In fact, McGuire and the Putative Class Members repeatedly complained to Ascension's management and their supervisors about being forced to work during their unpaid "meal breaks."

61. Thus, Ascension requested, suffered, permitted, or allowed McGuire and the Putative Class Members to work during their unpaid "meal breaks."

62. Despite accepting the benefits, Ascension does not pay McGuire and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

63. Thus, under Ascension's uniform automatic meal break deduction policy, McGuire and the Putative Class Members were, and are, denied overtime pay for those on-duty "meal breaks" during workweeks in which they worked more than 40 hours in violation of the FLSA.

64. In addition to excluding time from these employees' wages for "meal breaks," Ascension also uniformly subjects McGuire and the Putative Class Members to its automatic rounding policy.

65. Specifically, Ascension automatically rounds McGuire's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for Ascension's—not these employees'—primary benefit.

66. In fact, in conjunction with Ascension's automatic rounding policy, Ascension also prohibits McGuire and the Putative Class Members from clocking in and out for their shifts within more than 7 minutes of their scheduled shift start and end times.

67. By enforcing these policies together, Ascension ensures its automatic rounding policy *always* benefits Ascension—and *never* benefits McGuire and the Putative Class Members.

68. Thus, under Ascension's uniform automatic rounding policy, McGuire and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

69. McGuire worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

70. For example, during the two-week pay period ending on February 5, 2022, McGuire worked 8.32 overtime hours (not including the time she worked during her automatically deducted unpaid "meal breaks").

71. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

72. Indeed, McGuire and the Putative Class Members typically worked 12-hour shifts for at least 3-4 days a week (or 36 to 48 hours).

73. And McGuire and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for Ascension's predominate benefit.

74. As a result, McGuire and the Putative Class Members routinely work more than 40 hours in a typical workweek.

75. When McGuire and the Putative Class Members work more than 40 hours in a workweek, Ascension does not pay them overtime wages for all overtime hours worked because Ascension fails to include time these employees work "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

76. McGuire incorporates all other paragraphs by reference.

77. McGuire brings her claims as a collective action on behalf of herself and the Putative Class Members.

78. The Putative Class Members were victimized by Ascension's automatic meal break deduction policy, which is in willful violation of the FLSA.

79. Other Putative Class Members worked with McGuire and indicated they were paid in the same manner, performed similar work, and were subject to Ascension's same automatic meal break deduction policy.

80. Based on her experience with Ascension, McGuire is aware Ascension's illegal practices were imposed on the Putative Class Members.

81. The Putative Class Members are similarly situated in all relevant respects.

82. Even if their precise job duties might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

83. Therefore, the specific job titles of the various Putative Class Members do not prevent collective treatment.

84. Rather, the putative collective is held together by Ascension's uniform automatic meal break deduction policy, which systematically deprived McGuire and the Putative Class Members of overtime wages for all hours worked after 40 hours in a workweek.

85. Ascension's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

86. Ascension's records reflect the number of hours the Putative Class Members recorded they worked each week.

87. Ascension's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

88. Likewise, Ascension's records show the specific times the Putative Class Members punched in and out for their shifts.

89. And Ascension's records show that it automatically rounded the Putative Class Members' recorded time punches to the nearest quarter hour.

90. The back wages owed to McGuire and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

91. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Ascension's records, and there is no detraction from the common nucleus of liability facts.

92. Therefore, the issue of damages does not preclude collective treatment.

93. McGuire's experiences are therefore typical of the experiences of the Putative Class Members.

94. McGuire has no interest contrary to, or in conflict with, the Putative Class Members.

95. Like each Putative Class Member, McGuire has an interest in obtaining the unpaid wages owed to them under federal law.

96. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and Ascension will reap the unjust benefits of violating the FLSA.

98. Further, even if some of the Putative Class Members could afford individual litigation against Ascension, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

100. The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

    a. Whether Ascension engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    b. Whether Ascension's automatic meal break deduction policy deprived McGuire and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    c. Whether Ascension knew, or had reason to know, McGuire and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

      d.      Whether Ascension failed to pay McGuire and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

      e.      Whether Ascension's decision not to pay McGuire and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

      f.      Whether Ascension's FLSA violations were willful.

102.    McGuire knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

103.    As part of its regular business practices, Ascension intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to McGuire and the Putative Class Members.

104.    Ascension's illegal meal break deduction policy deprived McGuire and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

105.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

106.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

107.    Those similarly situated employees are known to Ascension, are readily identifiable, and can be located through Ascension's business and personnel records.

## ASCENSION'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

108. McGuire incorporates all other paragraphs by reference.

109. Ascension knew it was subject to the FLSA's overtime provisions.

110. Ascension knew the FLSA required it to pay non-exempt employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

111. Ascension knew the Putative Class Members were non-exempt employees entitled to overtime pay.

112. Ascension knew the Putative Class Members were paid on an hourly basis.

113. Ascension knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Ascension required these employees to record their hours worked using its timeclock system.

114. Ascension knew the FLSA required it to pay employees, including the Putative Class Members, for all hours they performed compensable work.

115. Ascension knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Ascension did not want performed.

116. Ascension knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

117. Ascension knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

118. Ascension knew the Putative Class Members regularly worked during their unpaid meal breaks.

119. Ascension knew it requested, suffered, permitted, or allowed the Putative Class Members to work during their unpaid meal breaks.

120. Ascension knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for Ascension's predominant benefit.

121. Indeed, the Putative Class Members complained to Ascension's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

122. Thus, Ascension knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

123. Nonetheless, Ascension automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

124. In other words, Ascension knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

125. Ascension's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

126. Ascension's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

127. Ascension knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived McGuire and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

128. Ascension knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

129. Indeed, Ascension has been sued previously for failing to pay overtime wages in violation of the FLSA. *See, e.g., Barber v. Ascension Health Ministry Service Cetner, LLC, et al.*, No. 3:15-CV-00409 (N.D. Fla.).

**CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

130. McGuire incorporates all other paragraphs by reference.

131. McGuire brings her FLSA claim on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

132. Ascension violated, and is violating, the FLSA by employing non-exempt employees (McGuire and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

133. Ascension's unlawful conduct harmed McGuire and the Putative Class Members by depriving them of the overtime wages they are owed.

134. Accordingly, McGuire and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**JURY DEMAND**

135. McGuire demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, McGuire, individually and on behalf of the Putative Class Members, seeks

the following relief:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    An Order pursuant to Section 16(b) of the FLSA finding Ascension liable for unpaid overtime wages due to McGuire and the Putative Class Members, plus liquidated damages in amount equal to their unpaid overtime wages;

    c.    A Judgment awarding McGuire and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Date:   October 3, 2023

Respectfully submitted,

**COHEN & MALAD, LLP**

By: /s/ *Scott D. Gilchrist*
Scott D. Gilchrist (#16720-53)
*Local Counsel for Plaintiff*
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
sgilchrist@cohenandmalad.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MCGUIRE AND THE PUTATIVE CLASS MEMBERS**